# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>JACKSON NOEL,<br>    Defendant. | CRIMINAL NO. 7:18-2-KKC<br><br>**OPINION AND ORDER** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Both parties have filed briefs regarding the forfeiture allegation in this matter (DE 118, 119.) Neither party has requested a hearing.

During the relevant time period, defendant Jackson Noel was the primary owner and pharmacist for Buffalo Drug, Inc., which is located in Putnam County, West Virginia. In this action, the government charged him with one count of unlawfully conspiring to dispense and distribute oxycodone and oxymorphone. After a five-day jury trial, the jury found him guilty of the charge.

The indictment contained a forfeiture allegation, which asserted that, pursuant to the federal statute related to criminal forfeiture, all of Noel's interest in $317,670.08 seized from a Buffalo Drug, Inc. bank account should be forfeited to the United States. *See* 21 U.S.C. § 853.

The first issue on forfeiture is whether Noel must forfeit the proceeds of only the crime for which he was convicted or whether he must also forfeit the proceeds of "other bad acts" that were proved at trial.

The indictment alleged a conspiracy lasting from June 2015 to December 2016. In a phone conference on January 22, 2019 the government agreed to limit the government's

evidence for the charged conduct to a single conspiracy consisting of Dr. Joel Smithers (who wrote prescriptions for the controlled substances at issue); members of a drug-trafficking organization led by Darryl Williams (who obtained prescriptions from Dr. Smithers); and Noel (who filled those prescriptions at Buffalo Drug, Inc.) (DE 55, Minutes; DE 58, Notice at 1-2.) In the same conference, however, the government indicated that it intended to seek permission to introduce evidence of "other bad acts" under Federal Rule of Evidence 404(b). This evidence consisted of proof that Noel filled prescriptions for controlled substances that were written by doctors other than Dr. Smithers for drug-trafficking organizations other than the one led by Williams. The government later filed a notice of its intent to offer this 404(b) evidence. (DE 58, Notice.) Noel objected but the Court determined that the evidence was admissible.

In its forfeiture brief, the government asserts that it is entitled under 21 U.S.C. § 853(a)(1) to the proceeds of not only the conspiracy for which Noel was convicted – the conspiracy involving Williams' crew and Dr. Smithers – but also the proceeds of the other "bad acts." It states that the figure of $363,382.30 was calculated by totaling the cash amounts Noel received for prescriptions written by 12 providers.

Section 853 provides in relevant part that "[a]ny person convicted of a violation" of a felony federal drug law must forfeit to the government "any proceeds the person obtained, directly or indirectly, as the result of *such violation*." 21 U.S.C.A. § 853 (a)(1) (emphasis added). The statute's plain language makes clear that only the proceeds of the violation for which the defendant was convicted are subject to forfeiture. It does not provide for the forfeiture of the proceeds of other bad acts. *See United States v. Nava*, 404 F.3d 1119, 1129 n.5 (9th Cir. 2005) ("Although the government introduced some evidence that

[defendant's] crimes actually began much earlier . . . the district court specifically instructed the jury that these crimes were . . . admitted under Fed. R. Evid . 404(b). . . . [T]he alleged earlier crimes cannot trigger forfeiture, because [the defendant] was not convicted of these offenses. Only properties involved in criminal violations for which a defendant is convicted are subject to forfeiture.")

The second issue on forfeiture is whether Noel should have to forfeit his interest in only his *profits* from the sale of the prescription drugs or whether he should have to forfeit his interest in the *gross* amount the Williams' drug-trafficking organization paid him for the controlled substances. In an unpublished opinion, the Sixth Circuit held that "gross proceeds should determine the baseline for calculating the amount of the forfeiture." *United States v. Logan*, 542 F. App'x 484, 498 (6th Cir. 2013) In *Logan*, the Sixth Circuit noted that other circuits had also determined that gross proceeds, not net profits, should be used to calculate the forfeiture amount and that this determination was based largely on "the plain language of 21 U.S.C. § 853." *Id.* (citing *United States v. Olguin*, 643 F.3d 384, 400 (5th Cir. 2011); *United States v. Heilman*, 377 F. App'x 157, 211 (3d Cir. 2011); *United States v. Bucci*, 582 F.3d 108, 123 (1st Cir. 2009)). *See also United States v. Keeling*, 235 F.3d 533, 537 (10th Cir. 2000) ("[F]or purposes of § 853, 'proceeds' contemplates gross proceeds and not merely profits.") In accordance with these cases, the Court finds that Noel has forfeited his interest in the gross amounts he received as a result of the charged conduct.

The final issue on forfeiture is the calculation of the amount of gross proceeds Noel received for the charged conduct. With his forfeiture brief, Noel submits an exhibit (DE 119-3) that he asserts contains the total amount he received from the members of

Williams' drug-trafficking organization during the time of the charged conspiracy. The government has not disputed that assertion. The exhibit reflects that the sum of the "Total Cash" amounts received by Buffalo Drug, Inc. from each of these individuals was $36,315. Accordingly, the Court will enter a preliminary judgment of forfeiture reflecting that Noel's interest in that amount is forfeited to the United States.

    Dated November 26, 2019

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY