UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>v.<br>JACKSON NOEL,<br>    Defendant. | CRIMINAL NO. 7:18-2-KKC<br><br>OPINION AND ORDER |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on the government's motion (DE 159) for the Court to reconsider its opinion on forfeiture. Specifically, the government asks the Court to reconsider its interpretation of the relevant forfeiture statute. That statute provides as follows:

> Any person convicted of a violation of this subchapter or subchapter II punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation.

21 U.S.C.A. § 853 (a)(1).

The question is whether this statute permits the Court to order forfeiture of the proceeds the defendant obtained, not only as a result of the crime for which he was convicted, but also as a result of other acts.

A jury found defendant Jackson Noel guilty of conspiring to illegally distribute oxycodone and oxymorphone in violation of 21 U.S.C. §§ 841(a)(1) and 846. This was the sole count of the indictment. At the time of the conduct charged in the indictment, Noel was the primary owner and pharmacist for Buffalo Drug, Inc. in Putnam County, West Virginia.

In a pretrial motion (DE 47), Noel raised the issue of the "parameters of the alleged conspiracy." Noel stated that the indictment charged a single conspiracy, but he asserted that

the discovery referred to "what appear as allegations of multiple conspiracies with numerous parties, some of whom have no connection with the Eastern District of Kentucky." (DE 47, Mem. at 1.) Noel also pointed out that the government had not, at that time, filed a notice indicating its intent to offer evidence of any other acts under Federal Rule of Evidence 404(b).

In a phone conference on January 22, 2019 the government addressed these issues. It explained that it was charging a "single conspiracy," consisting of Dr. Joel Smithers (who wrote prescriptions for the controlled substances at issue); members of a drug-trafficking organization led by Darryl Williams (who obtained prescriptions from Dr. Smithers); and Noel (who filled those prescriptions at Buffalo Drug, Inc.) (DE 55, Minutes.)

In the same conference, however, the government indicated that it intended to seek permission to introduce evidence of "other acts" under Rule 404(b). This evidence consisted of proof that Noel filled prescriptions for controlled substances that were written by doctors other than Dr. Smithers for drug-trafficking organizations other than the one led by Williams. The Court instructed the government to file an appropriate notice.

The government later filed a notice of its intent to offer evidence of the other acts either as evidence intrinsic to or "inextricably intertwined" with the charged conspiracy or as evidence of motive, opportunity, intent, plan, knowledge or absence of mistake under FRE 404(b). (DE 58, Notice.) In the notice, the government again clarified that the conspiracy charged in the indictment consisted of a "tacit agreement with Dr. Joel Smith and members of the Daryl Williams drug trafficking organization (DTO) to improperly dispense and/or distribute oxycodone pills outside of the usual course of professional practice and not for a legitimate medical purpose." (DE 58, Notice at 1-2.) Noel objected to the admissibility of prescriptions written by doctors for DTOs that were not part of the charged conspiracy (DE 72), but, at a pretrial conference, the Court determined that the evidence was admissible both as extrinsic

evidence and under Rule 404(b) to show intent, knowledge, and absence of mistake.

In its forfeiture brief filed after the trial, the government asserted that it was entitled to forfeiture of seized funds and a money judgment totaling $363,382.30 because this represented "[t]he total amount of proceeds obtained by the defendant from trafficking controlled substances." (DE 118, Br. at 2.) The government asserted that the "seized funds should be forfeited as proceeds of the unlawful activity for which the Defendant was convicted." (DE 118, Br. at 3.)

Thus, the government is pursuing forfeiture under 21 U.S.C. § 853(a)(1) which, as discussed, requires a defendant convicted of a felony drug crime to forfeit to the government, "any property constituting, or derived from, any *proceeds* the person obtained, directly or indirectly, as the result of such violation." The government argued that, under Section 853(a)(1), Noel was required to forfeit the proceeds of not only the conspiracy for which he was convicted – the conspiracy involving Williams' crew and Dr. Smithers – but also the proceeds of other acts by Noel, which were proved at trial. The government stated that the figure of $363,382.30 represented the proceeds Noel obtained from prescriptions written by 12 "identified suspect providers." (DE 118, Br. at 3.)

In its forfeiture ruling (DE 144), the Court determined that § 853(a)(1) does not permit the Court to order forfeiture of the proceeds of acts other than the crime for which the defendant was convicted. In doing so, the Court relied on the plain language of the statute. Again, it provides as follows:

> Any person *convicted of a violation* of this subchapter or subchapter II punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of *such violation*.

21 U.S.C.A. § 853 (a)(1)(emphasis added).

The Court determined that the phrase "such violation" at the end of the statute refers back to the violation for which the defendant is convicted, which is referenced at the beginning of the statute.

In support of its interpretation, the Court cited a footnote in *United States v. Nava*, 404 F.3d 1119 (9th Cir. 2005). In its motion for reconsideration, the government argues that the analysis in *Nava* is not applicable to this case. (DE 159, Mem. at 1.) However, the defendant in *Nava*, like Noel, was convicted of conspiracy to distribute controlled substances. *Nava*, 404 F.3d at 1123. Further, the *Nava* case, like this case, "involve[d] a criminal forfeiture under § 853 because the jury convicted" the defendant of qualifying drug offenses. *Id.* at 1124.

In *Nava* the defendant's daughter asserted that the property at issue was not subject to forfeiture under § 853 because she, not the defendant, actually owned it. *Id.* at 1125. The indictment charged the defendant with crimes beginning in July 1997. The government, however, introduced evidence that the defendant committed other non-charged crimes much earlier.

The court noted that title to forfeited property vests in the government "at the time the defendant committed the unlawful acts." *Id.* at 1124. The court determined that the issue on the daughter's petition was whether she or the defendant owned the property at the time the defendant committed the crimes "for which he was convicted." *Id.* at 1129. In explaining why this was the dispositive time for forfeiture purposes and not the time of the earlier uncharged acts, the court explained that the "alleged earlier crimes cannot trigger forfeiture, because [the defendant] was not convicted of these offenses" and "[o]nly properties involved in criminal violations for which a defendant is convicted are subject to forfeiture." *Id.* (citing 21 U.S.C. §§ 853(a)(1),(2)). The earlier ucharged crimes could not trigger forfeiture because "these crimes were 'previously committed,' 'not charged here,' and admitted under Fed. R. Evid. 404(b) to

4

show only 'intent, motive, opportunity, preparation, and knowledge.'" *Id*. at 1129, n.5.

Despite the language of the statute, the government argues that "forfeiture extends beyond simply the counts of conviction and applies to <u>all</u> related conduct." (DE 159, Mem. at 2)  In support of that assertion, the government cites the Seventh Circuit's opinions in *United States v. Venturella*, 585 F.3d 1013, 1018 (7th Cir. 2009) and *United States v. Genova*, 333 F.3d 750 (7th Cir. 2003), the Third Circuit's opinion in *United States v. Plaskett*, 355 F. App'x 639 (3rd Cir. 2009), and various district court cases (*United States v. Jafari*, 85 F. Supp. 3d 679 (W.D.N.Y. 2015); *United States v. Podlucky*, 2012 WL 1850931 (W.D. Pa. 2012); *United States v. Black*, 526 F. Supp. 2d 870 (N.D. Ill. 2007)). (DE 159, Mem. at 2.) This Court's ruling, however, is tied to the precise language of Section 853(a)(1), and none of these cases involve a forfeiture under that statute.

Moreover, in *Venturella*, the court cites a Ninth Circuit opinion that directly supports this Court's interpretation of Section 853(a)(1). In *United States v. Garcia-Guizar*, 160 F.3d 511 (9th Cir. 1988), the defendant, like Noel, was found guilty of conspiring to illegally distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. Also as in Noel's case, the government sought forfeiture of seized funds under § 853(a)(1). The defendant estimated that at least 80 percent of the $43,070 the government seized from him came from legal business.

In determining whether the government was entitled to the entire $43,070, the Ninth Circuit noted that § 853(a)(1) "requires the government to prove that the money constituted 'proceeds the person obtained, directly or indirectly, as the result of *such violation*.'" *Id*. at 518. The court clarified that the *violation* referenced is "the drug activities for which [the defendant] was *convicted*." *Id*. The court rejected the idea that the statute permits forfeiture of the proceeds of "relevant conduct." "In contrast to the 'relevant conduct' provisions of the Sentencing Guidelines, *see* U.S.S.G. § 1B1.3, this statutory limitation in § 853(a)(1) is critical

to the constitutionality of the preponderance of the evidence standard applied to criminal forfeiture under that section." *Id.* The preponderance standard is constitutional "because the criminal forfeiture provision does not itself describe a separate offense, but is merely an additional penalty for an offense that must be proved beyond a reasonable doubt." *Id.* (quotations and citation omitted). Thus, the court ruled that only that part of the seized funds that the government had proved "by preponderance of the evidence was proceeds of the conduct for which [the defendant] was actually convicted is properly subject to criminal forfeiture under § 853(a)(1)." *Id.*

In its motion for reconsideration, the government seems to concede this point at least for a defendant convicted of a drug felony under 21 U.S.C. § 841(a)(1). (DE 159, Mem. at 3.) It argues, however, that forfeiture on a conspiracy conviction is "significantly broader." (DE 159, Mem. at 2.) The Court agrees with the government that, under § 853(a)(1), a defendant must forfeit the "proceeds of the entire conspiracy" to the extent he obtained those proceeds. (DE 159, Mem. at 3; DE 167, Reply at 1.) In this case, the government made clear multiple times prior to trial that the only conduct underlying the conspiracy charge was the Smithers-Williams conspiracy. This was the "entire conspiracy" charged in this case, and this is the only conspiracy for which Noel was convicted. Thus, under § 853(a)(1), all the proceeds of that conspiracy are subject to forfeiture. There is no dispute that the proceeds of that conspiracy totaled $ 36,315.

The Court recognizes that, under the statute, the defendant must forfeit any proceeds "obtained, directly or indirectly" from the crime of conviction. 21 U.S.C. § 853 (a)(1). The adverbs directly or indirectly "refer to how a defendant obtains the property." *Honeycutt v. United States*, 137 S. Ct. 1626, 1633 (2017). "Most obviously, 'indirect' naturally covers any situation where funds are transferred by a victim (or purchaser) to a defendant through an

6

intermediary." *United States v. Cano-Flores*, 796 F.3d 83, 91–92 (D.C. Cir. 2015). Regardless of how the defendant obtains the proceeds, however, the defendant must obtain the proceeds *from the crime of conviction* in order to subject them to forfeiture under § 853(a)(1).

For all these reasons, the Court hereby ORDERS that the government's motion for reconsideration 159) is DENIED.

Dated May 21, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY