UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>v.<br>JACKSON NOEL,<br>    Defendant. | CRIMINAL NO. 7:18-2-KKC<br><br>**OPINION AND ORDER** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on defendant Jackson Noel's motion to vacate his conviction pursuant to 28 U.S.C. § 2255 (DE 219).

During the relevant time period, Noel was the primary owner of and pharmacist for Buffalo Drug, Inc., which is located in Putnam County, West Virginia. In this action, the government charged him with one count of unlawfully conspiring to dispense and distribute oxycodone and oxymorphone. After a five-day jury trial, the jury found him guilty of the charge. By judgment dated October 5, 2020 (DE 190), the Court sentenced Noel to a prison term of 120 months. According to the Bureau of Prisons website, his projected release date is November 30, 2028.

In his motion, Noel argues that his trial counsel was ineffective in six ways. He (1) failed to object to testimony by DEA Task Force Officer Richard Dalrymple; (2) failed to investigate and present evidence countering evidence that Noel was charging higher prices for controlled substances than other pharmacies; (3) failed to call the defense expert he had retained; (4) permitted Noel to testify without adequately preparing him; (5) failed to request or review discovery from the Government regarding other pharmacists who had filled

prescriptions for the doctor at issue; and (6) made prejudicial and irrelevant statements in his opening statement and failed to state Noel's defense.

In an addendum to his original motion, Noel also argues that his conviction should be overturned pursuant to *Ruan v. United States*, 142 S.Ct. 2370 (2022), a case decided after Noel's conviction and appeal.

The magistrate judge has filed a recommendation that the Court deny Noel's motion. Noel has filed objections to that recommendation. The Court will undertake a de novo review of those portions of the recommendation to which Noel has objected. 28 U.S.C. § 636(b)(1).

Noel does not dispute that the magistrate judge applied the correct law when assessing his ineffective assistance claims. For such claims, the Court must consider "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish he has been deprived of effective assistance, a defendant must show that counsel's performance was both constitutionally deficient and prejudicial. *Id*. at 687

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The defendant must show that "that counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms . . . considering all the circumstances." *Id*. at 688. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. The defendant must overcome the presumption that trial counsel's action were part of a "sound trial strategy." *Darden v. Wainwright*, 477 U.S. 168, 185-87 (1986).

To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

In his objections, Noel "emphasizes first and foremost this his primary objection" to the magistrate judge's recommendation is that it "denied his request for an evidentiary hearing to develop his argument. . . ." (DE 241 Objections 3.) A district court must grant a hearing to a petitioner "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b).

In his motion, while Noel requested an evidentiary hearing, he did not explain why his motion could not be resolved on the record. In his objections, he argues that a hearing is necessary to contrast Noel's case and that of another pharmacist who was charged with the same crime involving the same drug-trafficking organization as Noel but was acquitted. (DE 241 Objections 3.) The fact, however, that a jury acquitted one defendant charged with the same crime is not a basis to set aside Noel's conviction. Moreover, even assuming that such a comparison is relevant to his motion, Noel does not set forth anything outside of the records of the two cases that the Court should consider in making that comparison.

Noel also argues that a hearing is necessary so that his trial counsel can be cross-examined about his trial strategy. He argues that his trial counsel should be questioned to determine "whether there was any strategy at all, or whether the omissions were in fact due to a lack of thorough preparation, inadequate understanding of the legal and factual issues involved, and incompetent and deficient performance at trial." (DE 241 Objections 5-6.) He

3

argues that an evidentiary hearing will provide "an opportunity to hear directly from [trial counsel] about his strategy and the wisdom behind it." (DE 241 Objections 6.)

The issue under *Strickland*, however, is "the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington v. Richter*, 562 U.S. 86, 110 (2011). This Court must presume that "counsel's conduct falls within the wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotations and citation omitted). Whether trial counsel was, in fact, subjectively pursuing that sound strategy is irrelevant under *Strickland*. *Serrano-Rangel v. United States*, No. 10 C 6439, 2012 WL 5304154, at *4 (N.D. Ill. Oct. 24, 2012).

In *Burt v. Berghuis*, No. 1:02-CV-623, 2007 WL 2791106 (W.D. Mich. June 13, 2007), the petitioner argued that the state court of appeals had incorrectly analyzed an effective assistance claim "because that court merely speculated concerning the reasons for defense counsel's questions." *Id.* at * 22. The petitioner argued that the state court "should have ordered an evidentiary hearing to determine trial counsel's true motives in asking about the prior incidents and that [the federal district] court should cure the failure by holding a hearing of its own on the issue." *Id*. The district court rejected that argument noting that *Strickland* sets forth an objective standard of reasonable professional judgment. *Id*. Thus, there was no reason for an evidentiary hearing into trial counsel's subjective motivations for trial decisions. *Id*. *See also*, *United States v. Wilkes*, No. 07CR0330-LAB, 2018 WL 6726796, at *4 (S.D. Cal. Dec. 21, 2018) ("In other words, the Court examines whether counsel's actions were objectively reasonable, not what he was thinking or feeling at the time.")

Thus, testimony from Noel's trial counsel as to what his trial strategy was or why he took certain actions during trial or failed to take other actions is irrelevant. Instead, Noel

4

must show that his trial counsel's actions could not be considered sound trial strategy under an objective standard.

Noel also argues that, in issuing her recommendation, the magistrate judge failed to consider an affidavit by defense attorney Kent Wicker opining that Cagle rendered ineffective assistance of counsel. However, "because the reasonableness of counsel's actions under *Strickland* is a question of law for the court to decide, expert testimony regarding performance deficiencies carries little, if any, weight." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1242 n.19 (11th Cir. 2011). The Court has reached its conclusions based on the record, as is appropriate in this case.

As to Noel's objections to the magistrate judge's specific conclusions, he first objects to the magistrate judge's determination that his trial counsel James Cagle's failure to object to testimony by DEA Task Force Officer Dalrymple was not deficient or prejudicial. Officer Dalrymple has been with the Laurel County Sheriff's Office for 24 years and with the DEA for 17 years.

Noel argues that he was prejudiced by the following testimony from Dalrymple:

- That a "pill mill" was a term used for a clinic with a doctor who writes prescriptions for oxycodone in return for cash payments of $200 to $250. He testified that a "sponsor" provided the vehicle, money, food, and gas for groups of individuals who traveled to the clinic, got the prescriptions, and then found a pharmacy to fill them. (DE 149 Tr. 26-27.) He testified this was practice is called "drug diversion," which is diverting controlled substances from their intended purposes to users who abuse them. (DE 149 Tr. 24.)

- That the "red flags" that Dalrymple looks for as an investigator to spot a pharmacy that is illegally dispensing oxycodone include operating on a cash-

5

only basis and filling prescriptions written by the same doctor for a group of individuals who traveled a long distance to see that doctor. (DE 149 Tr. 29-29, 30-31.) He testified that it is "common sense" and "pretty obvious" that pharmacy is doing something wrong. (DE 1409 Tr. 29.)

- That the Code of Federal Regulations provides that a pharmacist "has a responsibility to ensure that he or she is filling prescriptions for legitimate medical purpose[s] in the usual course of practice." (DE 149 Tr. 30.)

Noel argues that this testimony is opinion testimony that Cagle should have objected to because the government did not disclose it as required under Federal Rule of Criminal Procedure 16(a)(1)(G). Even assuming that Cagle should have objected to this testimony, it is not reasonably probable that the jury would have acquitted Noel if this testimony had not been presented. Dalrymple's testimony established that investigators would be suspicious of a pharmacist who filled prescriptions for oxycodone on a cash-only basis for groups of people, all of whom traveled long distances to the same out-of-state doctor. This is common sense; jurors would find such activity suspicious without Dalrymple's testimony.

Multiple witnesses testified as to these "red flags" of illegal drug diversion. Lori Moles, who has been a pharmacist for more than 25 years and occasionally worked at Buffalo Drug, testified that she stopped working at Buffalo Drug because the number of out-of-state prescriptions and the volume of prescriptions for Schedule II controlled substances were "red flags" that made her "uncomfortable." (DE 150 Tr. 152-55.) She testified that the "red flags" she observed while working at Buffalo Drug were patients coming from long distances who did not live in the surrounding area with prescriptions written by out-of-state doctors, which she described as a "rare occurrence" at other pharmacies. (DE 150 Tr. 155.)

6

Jason Neal, a pharmacist at Wal-Mart, testified that pharmacists are trained to look for "red flags" of drug diversion, which include customers driving to an out-of-state doctor to get a prescription for pain pills. (DE 151 Tr. 53.) Neal testified that he declined to fill several prescriptions written by Dr. Joel Smithers, the prescribing doctor who played a key role in this conspiracy, because patients were traveling a long distance to see him for normal pain management that could have been treated locally. (DE 151 Tr. 52-53.)

David Lucas, an investigator with the West Virginia Board of Pharmacy, testified that the "red flags" he found during his investigation of Buffalo Drug were that 95 percent of the oxycodone prescriptions were paid in cash, which he described as an "extremely high" percentage; that there was a high number of patients who drove hours in groups from Kentucky to a pain clinic in Virginia and then to Buffalo Drug in West Virginia to fill prescriptions written by doctors with "questionable prescribing practices." (DE 151 Tr. 16-17, 47.)

This is just some of the testimony on red flags. Even if Noel's trial counsel should have objected to Dalrymple's testimony on these points, and even if that objection would have been sustained, Noel was not prejudiced by the testimony. The jury heard the same testimony from multiple witnesses.

In his objections, Noel argues that his counsel should have objected to the testimony regarding red flags by all these witnesses because none was "an appropriately-vetted expert." (DE 241 Objections 7.) Noel did not object to any of this testimony in his § 2255 motion. Absent compelling reasons, a claim raised for the first time in objections to a magistrate judge's report is deemed waived. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (citation omitted); *Ward v. United States*, 208 F.3d 216 (6th Cir. 2000), 2000 WL 282648, at * 1 (citing *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir.1996)).

7

Further, Noel does not explain on what basis trial counsel should have objected to the testimony of these witnesses. He argues only that they were not "appropriately vetted." Moles and Neal are both pharmacists and testified as to their own personal experience either at Buffalo Drug or in the industry, including the "red flags" of drug diversion. As to Lucas, he testified as to his personal experience in the investigation of Buffalo Drug. To the extent that any of the testimony by these witnesses could be considered opinions, the Sixth Circuit "regularly allows qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate cautionary instructions are given . . . . ." *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir.2004) (citing *United States v. Thomas*, 99 Fed.Appx. 665, 668–69 (6th Cir.2004)).

The Court instructed the jury multiple times that, for the witnesses who testified as to both facts and opinions, the jurors should weigh the testimony on facts the same as any other witness. The Court further instructed the jury they did not have to accept the opinions of any of these witnesses and should consider the qualifications of the witnesses and how they reached their conclusions. This is the proper cautionary instruction. (DE 112 Instruction No. 22.)

As to Dalrymple's testimony regarding the Code of Federal Regulations, even if trial counsel could have successfully excluded such testimony, Noel was not prejudiced by it. The testimony was accurate. The code does provide that a prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, *but a corresponding responsibility rests with the pharmacist who fills the prescription.*" 21 C.F.R. § 1306.04(a) (emphasis added). The jury heard the same information from the Court, which accurately instructed that the government must prove that Noel "knowingly filled prescriptions that

8

were not issued for a legitimate medical purpose in the usual course of professional practice." (DE 112 Instruction No. 13.)

Noel's next objection to the magistrate judge's specific rulings deals with his argument that his trial counsel was ineffective because he did not present evidence that Buffalo Drug's prices were actually below the market prices, not above it. With his motion, Noel presents an affidavit by a pharmacist who states that he examined the prices Buffalo Drug charged the drug-trafficking organization that was the basis for his conviction. The pharmacist states that those prices were within the market rate or lower than competitors. The Court agrees with the magistrate judge, however, that Noel cannot show he was prejudiced by testimony indicating he charged more for drugs than other pharmacies. The testimony that Buffalo Drug's prices were higher than other pharmacies was not critical to his conviction. His conviction was supported by the above testimony regarding Buffalo Drug's practice of charging cash only for controlled substances and filling prescriptions written by an out-of-state doctor for groups of people who did not live in the region of Buffalo Drug or the doctor.

Darryl Williams, the leader of the drug-trafficking organization that was the basis for Noel's conviction, testified that he would send "a whole carload" of people to Dr. Smithers, whose office was in Virginia, to obtain prescriptions. (DE 150 Tr. 10-11.) The next day, Williams would then send people to get those prescriptions filled at Buffalo Drug in West Virginia. (DE 150 Tr. 11) He could not find other pharmacies that would fill Dr. Smithers' prescriptions. (DE 150 Tr. 11-12.) It was Dr. Smithers who recommended that Williams go to Buffalo Drug to get the prescriptions filled. (DE 150 Tr. 12.)

"As Williams put it, he tried 'every Walgreen, Rite Aid, Walmart, [and] CVS from Martinsville, Virginia, to Louisville, Kentucky.'" *United States v. Noel*, No. 20-6167, 2021 WL 5180915, at *1 (6th Cir. Nov. 8, 2021). "When he raised this issue with Dr. Smithers, the doctor told him to go see Jackson Noel at Buffalo Drug. Buffalo Drug before long became one

9

of three primary pharmacies Williams's organization used to fill prescriptions from Dr. Smithers." *Id*.

Williams gave cash to the members of the DTO to buy the drugs because that was all Buffalo Drug accepted. (DE 150 Tr. 13.) He testified one person could present four or five prescriptions. (DE 150 Tr. 14-15.) He testified that Buffalo Drug never asked any questions. (DE 150 Tr. 15.) He testified that he would see people at Dr. Smithers' office and then the very next day see them at Buffalo Drug. (DE 150 Tr. 15.) "All told, Noel filled 192 prescriptions that Dr. Smithers wrote for identified members of the Williams operation." *Id*. As the Sixth Circuit noted, many members of Williams' organization lived near Stone, Kentucky, which is 250 miles from Smithers' Virginia office. Buffalo Drug was 115 miles from Stone and 252 miles from Smithers' office. *Id*.

Thus, the testimony regarding Buffalo Drug's prices was not critical to Noel's conviction. Noel points out that the Sixth Circuit noted that patients paid "inflated prices" at Buffalo Drug. *Id*. But, the Sixth Circuit also discussed multiple other red flags of Buffalo Drug's operation including "prescriptions from out-of-state doctors, prescriptions being written for and filled by far-away, out-of-state patients, . . . high doses of opioids, and patients traveling long distances or in groups to obtain and fill prescriptions." *Id*.

Given the overwhelming evidence of illegal drug diversion in this case, even if Noel's trial counsel should have investigated prices at other pharmacies, Noel was not prejudiced by his counsel's failure to do so.

Noel's third objection to the magistrate judge's specific conclusions deals with his argument that his trial counsel was ineffective for failing to call his retained expert Steven DeAtley, Ph.D., who has worked as a pharmacist and a pharmacologist. (DE 219-4 DeAtley Disclosure.) Noel argues that Dr. DeAtley would have testified as to the relevant standard of care for pharmacists; the red flags of illegal drug diversion that pharmacists should be on the

10

lookout for; and how those red flags have changed over time. (DE 219 Objections 24.) Noel argues Dr. DeAtley's testimony would have countered the opinion testimony of TFO Dalrymple. (DE 219 Objections 24-25.)

Cagle's decision to cross-examine Dalrymple in lieu of calling Dr. DeAtley was a reasonable trial strategy. "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington*, 562 U.S. at 111. As the Sixth Circuit noted, the evidence presented at trial showed multiple red flags of illegal drug division at Buffalo Drug. *Noel*. 2021 WL 5180915 at *3. Calling DeAtley would have risked extensive cross examination on any opinion to the contrary.

Moreover, the Court cannot find that Noel was prejudiced by the decision to cross-examine Dalrymple instead of calling Dr. DeAtley. The Supreme Court has recognized that, "[i]n many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Harrington*, 562 U.S. at 111. Cagle did cross-examine Dalyrmple on his testimony regarding red flags. Determining any additional benefit from DeAtley's testimony would be purely speculative. To show prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable. *Id*. at112.

Noel's fourth objection to the magistrate judge's specific conclusiions relates to his argument that Cagle should not have allowed Noel to testify or should have, at least, better prepared him to do so. The magistrate judge determined that, even if Cagle's preparation of Noel was deficient, he was not prejudiced. In his motion, Noel argued that he would not have made certain admissions if he had been adequately prepared, including, most importantly, that Buffalo Drug's business practices demonstrated the "red flags" of drug diversion discussed above. (DE 219 Mem. 31.) The magistrate judge again noted the number of witnesses who provided similar testimony. For his objections to that ruling, Noel again

argues that his trial counsel was deficient for not moving to exclude all testimony regarding the "red flags" of drug diversion and for failing to call expert Dr. DeAtley to counter this testimony. The Court has discussed and rejected both those arguments above.

Noel's fifth objection to the magistrate judge's specific conclusions deals with his argument that Cagle did not effectively cross-examine Walnart pharmacist Neal, who testified that he declined to fill some of Dr. Smithers' prescriptions. The magistrate judge determined that Cagle's cross examination of Neal could be considered sound trial strategy. In his objections, Noel again argues that Cagle should be called to testify as to what his strategy actually was on this cross examination. As explained above, *Strickland* establishes an objective standard. Cagle's actual trial strategy is irrelevant.

For his sixth objection, Noel argues that the magistrate judge failed to consider the cumulative effect of allegedly prejudicial statements made by Cagle in his opening statement and the various deficiencies he asserts with Cagle's representation discussed above. The Court has determined, however, that Noel has failed to prove any such deficiencies or prejudice under *Strickland*. Accordingly, there is no cumulative effect to consider.

Finally, Noel argues that the magistrate judge should have recommended that the Court issue a Certificate of Appealability on, presumably, all issues raised by him in his motion. He argues only that he "has demonstrated that he can provide substantial evidence at a hearing" that Cagle's performance was deficient. (DE 241 Mem. 19.) As explained, however, a hearing on Noel's motion is not necessary or appropriate.

Accordingly, the Court hereby ORDERS as follows:

1) Noel's objections (DE 241) to the magistrate judge's Order and Report and Recommendation are OVERRULED;

2) The Order and Report and Recommendation (DE 239) is ADOPTED by the Court;

3) For the reasons stated in this opinion and in the Order and Report and Recommendation, Noel's motion (DE 219) for relief under 28 U.S.C. § 2255 is DENIED;

4) The Court will not issue a Certificate of Appealability, Noel having failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); and

5) Judgment will be entered consistent with this opinion.

This 10th day of December, 2024.

*Karen K. Caldwell*

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY