Eastern District of Kentucky
**FILED**

FEB 06 2025

AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

**CASE #25-5004**

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

Jackson Noel                                             Petitioner – Appellant

vs.

United States of America                                 Respondent – Appellee

****************

The date is January 28, 2025, and I just received the government's response to my motion for a COA. The response was post marked January 13th so one could reasonably conclude that my mail is delayed by 2 weeks while incarcerated at Hazelton USP Satellite Camp. After reading the government's response I have some thoughts and facts that this court may find quite interesting. The government has always waited until the last possible minute to file all of its proceedings. I must admit that I was impressed with both the speed of the government's response and the level of effort placed within it. That is however where the admiration ends. The prosecution says I must make a substantial showing of the denial of a constitutional right. As far as the prosecutor is concerned as long as I HAD an attorney and he SHOWED UP for court I had every constitutional right I deserved. If the facts that I have already provided to this court does not lay doubt that the district court could have rendered a different ruling then this very procedure is nothing more than a farce. In reading the prosecutor's response I sense a desperate effort to keep this case out of the 6th Circuit Court of Appeals because they FEAR the outcome as well they should. They call the juror's letter "claims raised for the first time". These claims were brought before the judge in a letter I wrote to her over a year ago. The letter IS in the record. Is this court really going to let an innocent 67 year old man continue to spend time in prison knowing that there is a letter written by a juror that proves the jury did not even have the facts of the case accurately and resulted in 2-3 members changing their verdicts to guilty? I will answer topic by topic the allegations the prosecutor makes against me. Many of the prescriptions

DID contain anomalies but does NOT suggest illegitimate prescription practices and drug diversion. Yes there were red flags that I so very honestly admitted on the witness stand. When asked about each red flag I answered YES, IT COULD BE. For reasons beyond my comprehension the only word out of those FOUR anyone heard was the first one. We considered EVERY red flag and determined that in each one of these cases...they did not apply. ALL of the pain clinics in Kentucky were closed down. These patients/customers were travelling to the closest place to obtain the relief they had grown accustomed to. Dr. Smithers began treating those customers while he was practicing in Charleston/Beckley right here in West Virginia. There was NOTHING unusual about Kentucky people coming to West Virginia pain clinics to obtain relief. For this to be a red flag they would need to be passing up closer options. That was not the case! West Virginia sanctioned pain clinics...why shouldn't a West Virginia pharmacy fill their prescriptions? Dr. Smithers chose to move his practice to Virginia. These patients followed him over there. They were already in our computer system. We saw nothing wrong with them travelling there because again...they were NOT passing up closer options. Our prices which the judge even says did not make a difference were no higher than other pharmacies for this type of medication. These people did NOT come to our pharmacy by the carloads! This was a PROVEN fact in court through our time dispensing report. The prescriptions were for high doses of opioids but were REASONABLY written for those medications except for oxymorphone which we REFUSED to dispense as it was written. We called Dr. Smithers and made him aware of the dosing irregularity and told him we would only dispense up to 60 even if he wrote it for more. While I understand the government's concern for keeping out my objections for the gun enhancement and the letter I received from a PURPORTED juror, I could not disagree more. The letter includes her juror number and a copy of the actual envelope it came in. One five minute phone call and this juror would not be purported anymore. This letter proves the jury did not have the facts of the case correctly and that has cost me 10 years of my life. Can the court really let this go on knowing how wrong it actually is? The government says I am improperly poking holes in the evidence surrounding my conviction. I am not poking holes in it. I am simply providing ALL of it. The government says I do not seriously contest the district court's denial of my 2255 motion. How serious is 10 years in prison for a 67 year old man that did nothing other than his job? As far as the issues raised in my actual 2255 please read the objections provided by my attorney which are actually quite compelling. The DEA task

officer DID improperly testify as an expert witness. A VERY BIASED witness that made NO attempt to tell the WHOLE truth. He did not talk about all the other pharmacies doing the exact same thing without prosecution. He said our customers paid cash only when we just did not bill their insurance and failed to mention the fact that their insurance would not work there anyway. He did not mention logical reasons these customers were travelling so far to secure these medications. He also improperly said that large groups of customers from out of region were filling at Buffalo Drug. Do the actual facts of this case mean anything at all? How many times must I prove that there were not carloads of customers but I know who did fill for carloads and he was found NOT GUILTY in the same courtroom I was tried. My lack of an expert witness was crucial! An expert witness could have accurately described the playing field and not only justified the decisions I made but also put the facts of this case on full display which obviously NEVER happened. He would have explained the red flags as OBSOLETE which they most certainly were. When red flags were introduced there were doctors writing for and pharmacies filling prescriptions in EVERY jurisdiction in the country. If someone from Kentucky came to West Virginia that was a major red flag because of all the closer options available to them. Why would they do that? Now there are no other closer options. Then there is the red flag about paying cash "not billing insurance". If the CUSTOMER came in and said they had insurance but wanted to pay cash that is a major red flag. What are they trying to hide? That did not happen. The prosecution said that calling my expert would have risked extensive cross examination…bring it on! Bring on anything that will clarify the facts of this case to the jury and the general public. The one and only reason our expert was not used was because my attorney thought we had the case won. The government DID NOT PROVE conspiracy. How ineffective was that decision in that moment? As far as the admissions I made on the witness stand…they were not admissions at all if you listen for ALL FOUR WORDS…YES, IT COULD BE. The Wal-Mart pharmacist said HE would not have filled those prescriptions but could not explain why other Wal-Mart pharmacists actually did. He said it was up to the individual pharmacist. One must realize one thing about this case. The use of opioids has been a steady progression for the last 30 years. As this progression peaked and was winding down there were just more customers on our doorstep because their options were fewer and getting less with each passing day. Corporations got wind of civil suits and decided the risks were too high to continue. Some pharmacies went out of business or lost their wholesaler. Hence 2015 and 2016

was the peak of our opioid dispensing. Our policies continued to change as well. We ceased the filling of Kentucky residents 6 months BEFORE we were raided because that was where the progression had taken us. We were always aware of what other pharmacies were doing and trying our best to serve our customers while keeping diversion to a minimum.

RUAN: When one actually considers ALL of the facts of this case one can and should conclude that there was NO criminal intent. We did not dispense to ANYONE we thought to be diverting drugs. Every prescription we filled was thought to be taken by the person for whom it was written. How can you find criminal intent with that? To have criminal intent you must have knowledge of drug diversion or illegal protocol…we had no clue we were doing anything illegal because we were not. I understand why the government acted with such speed and vigilance to keep this case out of the 6th Circuit Court of Appeals…because they know how wrong I have been done and they do not want anyone else to know. I honestly do not know how the prosecutor can sleep at night knowing they have ruined the life of a hard working honest man for the sake of a W in the win column.

*[signature]*

# Justice Department Sues Stockton-based Nurse Practitioner to Stop Her Sale of Illegal Opioid Prescriptions



A civil complaint filed against California nurse practitioner Joan Rubinger alleges that the medical practitioner ran a long-running nationwide scheme to sell illegal opioids for cash.

Court documents show that Rubinger traveled from city to city, providing a range of services from intravenous flushes to prescriptions for controlled substances.

According to the complaint, Rubinger sold opioid prescriptions to her customers for cash and invited them to select their own prescriptions from a menu of highly addictive drugs intended to treat a wide variety of medical conditions. These drugs included oxycodone, Percocet, Xanax, and Adderall, some of which can be dangerous in combination.

Read more about the DEA investigation.